UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JASON FRINDT,<br>On behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LINDSEY FASCIONE, et al.<br><br>Defendants. | ) | CASE NO. 1:25-cv-02226<br><br>JUDGE PATRICIA A. GAUGHAN<br><br>**<u>PLAINTIFF'S AMENDED COMPLAINT FOR EQUITABLE AND MONETARY RELIEF</u>**<br><br>**<u>[Jury Demand Endorsed Hereon]</u>** |

Plaintiff Jason Frindt, for his Complaint against Defendants Lindsey Fascione, Insight Behavioral Consulting, LLC ("Insight Behavioral") and Insight Psychiatric Clinic, LLC ("Insight Psychiatric"), states and alleges as follows.

## INTRODUCTION

1. This Amended Complaint serves two purposes. First, it removes Lindsey Fascione's status as a Defendant as to Plaintiff's FLSA and ERISA claims. Second, it adds factual detail to Plaintiff's fraudulent transfer claim.

2. Plaintiff Jason Frindt and his former co-workers whom he seeks to represent in this action were employees of Insight Behavioral, a company that, until July 2025, provided in-school and after-school services for children and adolescents with behavioral barriers.

3. While Insight Behavioral is still ostensibly a going concern, it ran into financial difficulties over recent years due to mismanagement and misappropriation of corporate assets by now-deceased owner Jeremy Meduri ("Meduri") and his wife, Defendant Lindsey Fascione. Insight has ceased active operations.

4. As a result of the actions of Jeremy Meduri and Defendant Fascione, Insight Behavioral did not pay Insight employees their full wages earned in 2025, failed to pay minimum wages and overtime pay due, and did not contribute to employees' retirement accounts monies that were withheld from employees' pay in 2024 and 2025.

5. Instead, Jeremy Meduri and Defendant Fascione used money owed as wages and benefits to Plaintiff, similarly situated employees, and putative class members to line their own pockets, purchase a home worth over $1 million, purchase numerous luxury automobiles, fund purchases for Insight Psychiatric, and take lavish vacations around the world.

6. This lawsuit asserts four claims. First, on behalf of Plaintiff and similarly situated former employees of Insight Behavioral, it asserts minimum wage and overtime pay claims against Insight Behavioral under the Fair Labor Standards Act, ("FLSA"). Second, on behalf of all affected participants in Insight's retirement plan a claim under the Employee Retirement Income Security Act ("ERISA"), it asserts a claim against the Estate of Jeremy Meduri for breach of fiduciary duty resulting in underfunding of participant accounts. Third, it asserts a claim under the Ohio Fraudulent Transfer Act, R.C. §§ 1336.01, et seq. as a result of the transfer of Insight Behavioral assets to Defendants Insight Psychiatric, Fascione, and Jeremy Meduri at

such times as Insight Behavioral was insolvent or shortly before Insight Behavioral became insolvent. Lastly, on behalf of all affected former employees of Insight Behavioral, it asserts a factually-related claim under Ohio law of unjust enrichment as a result of the conduct described above.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's FLSA and ERISA claims are federal questions.

8. This Court has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the FLSA and ERISA claims as to form part of the same case or controversy.

9. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because one or more Defendants reside in this district and division and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here.

## PARTIES

10. Defendant Insight Behavioral is located at 896 Corporate Way, Westlake, Cuyahoga County, Ohio, and, at all times material, operated an alternative school for children with disabilities.

11. Plaintiff was employed by Defendant Insight Behavioral from August 1, 2023, to May 2, 2025, as Insight Behavioral's Chief Technology Officer.

12. Insight Behavioral was the W-2 employer of Plaintiff, the putative opt-in plaintiffs, and the putative class members, and had annual gross sales volume of not less than $500,000.00.

13. Plaintiff, the putative opt-ins, and the putative class members were "employees" of Insight Behavioral, as defined under the FLSA, ERISA and relevant state law.

14. Jeremy Meduri was also an "employer" of Plaintiff, the putative opt-ins, and the putative class members within the meaning of the FLSA, 29 U.S.C. § 203(d), and corresponding provisions of state law.

15. Defendant Meduri was the sole owner of Insight Behavioral, and thus his Estate is now the owner of Insight Behavioral.

16. Insight Psychiatric is also located at 896 Corporate Way, Westlake, Cuyahoga County, Ohio, and, at all times material, provided mental health services for students at Insight Behavioral.

17. Insight Psychiatric was owned jointly by Jeremy Meduri and Defendant Fascione, and is thus now jointly owned by Meduri's Estate and Defendant Fascione.

18. Meduri and Fascione were, at all times relevant, a married couple, sharing such assets as bank accounts, vehicles, and homes.

19. Meduri made all significant management decisions for Insight Behavioral relevant to this case, including, but not limited to determining if and when employees of Insight Behavioral would be compensated, and controlling the work of Insight Behavioral's employees.

20. Thus, Jeremy Meduri was an employer pursuant to 29 U.S.C. § 203(d) in that they were "person[s] [who] act[ed] directly or indirectly in the interest of an employer," Insight, "in relation to employees," including Plaintiff, the putative opt-in

plaintiffs, and the putative class members. Jeremy Meduri had operational control over significant aspects of the company's operations and day-to-day functions, including compensation of employees.

21. Plaintiff, the putative opt-ins, and the putative class members were also "participants" in the Insight Behavioral Retirement Plan and the Insight Behavioral Consult SOCA Benefit Plan (collectively the "Plans"), as that term is defined in 29 U.S.C. § 1002(7).

22. The Insight Behavioral Consult SOCA Benefit Plan was an "employee benefit welfare plan," and the Insight Behavioral Retirement Plan "employee pension benefit plan," as those terms are defined in 29 U.S.C. § 1002(2).

23. Jeremy Meduri was, at all times material, a "fiduciary" for the Plans, as that term is defined in ERISA because he "exercise[d] any discretionary authority or control respecting management or disposition of [Plan] assets." 29 U.S.C. § 1002(21)(A). Meduri exercised such authority or control at the time that contributions that they owe to the Plans become due and/or delinquent.

## RELEVANT FACTS

24. Plaintiff and those similarly situated were employees of Insight Behavioral during the three years preceding the filing of this lawsuit.

25. In the three years preceding the filing of this lawsuit, Insight Behavioral was routinely in dire financial straits.

26. For instance, between 2023 and 2025, Insight Behavioral was repeatedly threatened with inability to meet payroll and took out numerous high-interest loans to keep the business barely afloat.

27. By way of further example, in 2024, Insight Behavioral was the subject of a federal tax lien filing due to its inability to pay income taxes.

28. By way of further example, in June 2024, Jeremy Meduri asked Plaintiff for a $38,000 loan to fund payroll, and Plaintiff obliged.

29. Nevertheless, instead of tightening the corporate purse strings, as stated above, Jeremy Meduri regularly and deliberately misdirect assets of Insight Behavioral to himself, his wife Lindsey Fascione, and their affiliated company, Insight Psychiatric.

30. For instance, the funds lent by Plaintiff under the auspices of helping Insight Behavioral cover payroll were instead directed to Meduri personally.

31. By way of the further example, in late 2023/early 2024, Insight Behavioral took a large loan on its Accounts Receivable. Much of the proceeds from that loan went not to Insight Behavioral, but to help fund the $1,100,000 purchase of Meduri and Fascione's home at 30611 Winston Drive, Bay Village, OH.

32. As a result of that misappropriation, over the course of the years preceding the filing of this lawsuit, Insight Behavioral employees' wages and required contributions to the Plans were repeatedly delinquent and/or not made at all.

33. In fact, beginning in late April of 2025, Meduri effectively stopped funding payroll and employee benefits for all Insight Behavioral employees.

34. Plaintiff and other similarly situated regularly directed that compensation be withheld from their paychecks to the Insight Behavioral Retirement Plan.

35. Meduri misdirected those withholdings for the benefit of him and Defendant Fascione, and failed to transmit them to the Insight Behavioral Retirement Plan.

36. Meduri likewise failed to transmit required employer premiums to the Insight Behavioral Consult SOCA Benefit Plan.

37. Plaintiff and other similarly situated employees regularly worked 40 or more hours per workweek for Insight Behavioral.

38. As a result, Insight Behavioral failed to pay Plaintiff and those similarly situated for all hours worked, including overtime compensation for hours worked in excess of 40 in a workweek.

39. Indeed, with clear knowledge of the wage and benefit liability to Insight Behavioral employees, the finances of Meduri, Defendant Fascione, and Defendant Psychiatric were vastly enriched by the transfer of assets from Insight Behavioral to each of them.

## COLLECTIVE ACTION ALLEGATIONS

40. Plaintiff brings this case as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and on other similarly situated persons who have similar claims under the FLSA and who have been, are being, or will be, adversely affected by Insight Behavioral's and Meduri's unlawful conduct.

41. The employees who are "similarly situated" to Plaintiff for which Plaintiff seeks to represent and for which Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff himself is a member, is composed of and defined as follows:

> **All current and former employees of Insight Behavioral at any time from three years preceding the filing of this Complaint through the final disposition of this matter.**

42. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, and attorneys' fees and costs under the FLSA. In addition to Plaintiff, numerous current and former employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff is representative of those other employees and is acting on behalf of their interests as well as his own in bringing this action.

43. Such persons are "similarly situated" with respect to the aforementioned FLSA violations in that all were hourly non-exempt employees, and all were subjected to and injured by the unlawful practice of failing to pay Plaintiff and others similarly situated minimum wages or an overtime premium of one and a half times their regular rate for all hours that exceeded 40 in the workweek. All have the same claims against Defendants Insight Behavioral and the Estate of Jeremy Meduri for unpaid minimum wages or overtime compensation as well as for liquidated damages, attorneys' fees, and costs.

44. The identities of the putative FLSA opt-ins are readily identifiable through the payroll records Insight Behavioral has maintained, and were required to maintain, pursuant to the FLSA. 29 U.S.C. § 211(c) & 29 C.F.R. § 215.2.

## CLASS ACTION ALLEGATIONS

45. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and others similarly situated who have similar claims under ERISA and/or the laws of the State of Ohio, which are defined as:

> **All current and former employees who worked for Insight Behavioral at any time from three years preceding the filing of this Complaint through the final disposition of this matter who had less than all of the money withheld from their pay contributed to the Plan within 30 days of the withholding (the "ERISA Class").**
>
> – and –
>
> **All current and former employees who worked for Insight Behavioral at any time from three years preceding the filing of this Complaint through the final disposition of this matter who have not been paid all wages due to them (the "Ohio Law Class").**

46. Each Class is so numerous that joinder of all members is impracticable. The exact number of class members is unknown, but is estimated to exceed 50 individuals each, whose identities are ascertainable from the payroll records Insight Behavioral has maintained, and were required to maintain, pursuant to Ohio law. Ohio Const. art. II, § 34a.

47. There are questions of law or fact common to the ERISA Class including whether Insight Behavioral and Meduri failed to make all requisite contributions to the Plans in a timely manner.

48. There are questions of law or fact common to the Ohio Law Class including whether all wages due to class members have been paid.

49. The questions of law or fact that are common to the Classes predominate over any questions affecting only individual members. The primary questions that will

determine these Defendants' liability to the Classes, listed above, are common to each Class as a whole, and predominate over any questions affecting only individual Class members.

50. Plaintiff's claims are typical of the claims of other members of the Classes. Plaintiff's claims arise out of the same uniform course of conduct by these Defendants and are based on the same legal theories as the claims of other members of the Classes.

51. Plaintiff and the Classes have all been injured in that they have been uncompensated due to these Defendants' common policy, and practice, and willful conduct. These Defendants' corporate wide policies and practices affected the Classes similarly, and these Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Class members.

52. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests are not antagonistic to, but rather are in unison with, the interests of other class members.

53. Plaintiff's counsel has broad experience in handling class action litigation, including wage-and-hour and employee benefits litigation, and are fully qualified to prosecute the claims of the Classes in this case.

54. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant

to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

**COUNT ONE**
**(FLSA Violations against Defendants Insight Behavioral and the Estate of Jeremy Meduri)**

55. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

56. Plaintiff brings this claim for violations of the FLSA's minimum wage and overtime provisions on behalf of himself and the FLSA Collective members who will join this case pursuant to 29 U.S.C. § 216(b).

57. The FLSA requires that non-exempt employees receive at least Ohio's minimum wage, as well as overtime compensation for hours worked in excess of 40 per week of "not less than one and one-half times" the employees' properly calculated "regular rate." 29 U.S.C. §§ 206, 207(a)(1).

58. Plaintiff and the putative opt-ins were classified as non-exempt, were misclassified as exempt, and/or became non-exempt as a result of the pay practices described above

59. Plaintiff and the putative opt-ins were not paid for all time worked, were frequently paid less than the requisite minimum wage, and were frequently not paid a requisite overtime premium.

60. At all relevant times, Insight Behavioral and Jeremy Meduri knew they were required to pay Plaintiff and similarly situated employees all required minimum wages and

overtime compensation earned at a rate of one and a half times their properly calculated regular rate.

61. By engaging in the practices described above, Insight Behavioral and Jeremy Meduri willfully violated the FLSA and regulations thereunder that have the force and effect of law.

62. The exact total amount of compensation that Insight Behavioral and the Estate of Jeremy Meduri have failed to pay Plaintiff and similarly situated employees is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant Insight Behavioral.

63. As a result of these Defendants' violations of the FLSA, Plaintiff and similarly situated employees were injured in that they did not receive all minimum wages and overtime compensation due to them pursuant to the FLSA. They are entitled to an award of minimum wages and unpaid overtime compensation as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

**COUNT TWO**
**(ERISA Breach of Fiduciary Duty against Estate of Jeremy Meduri)**

64. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

65. ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes participants to enjoin any act or practice which violates ERISA or obtain other appropriate equitable relief to redress such violations.

66. The actions of Jeremy Meduri described above, including his failure to make all contributions and benefit premium payments for Plaintiff and all employees of

Insight Behavioral and their failure to maintain all of Plaintiff's relevant timekeeping and contribution records, violate various sections of ERISA, including, but not limited to, §§ 1104(a)(1), 1059, and 1145.

67. Plaintiff seeks equitable relief under § 1132(a)(3) including, but not limited to:

(a) injunctive relief directing Defendant Insight Behavioral to provide complete and accurate information to Plaintiff sufficient to determine his benefits due; and

(b) a surcharge or equitable restitution against Defendants Insight Behavioral and the Estate of Jeremy Meduri disgorging ill-gotten gains resulting failing to make all necessary contributions on Plaintiff's behalf.

**COUNT THREE**
**(Fraudulent Transfer Liability against all Defendants)**

68. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

69. Plaintiff and other members of the Class are "creditors" within the meaning of the Ohio Fraudulent Transfer Act, R.C. §§ 1336.01.

70. A transfer "is fraudulent as to a creditor" when the creditor's claim arose "before, or within a reasonable time not to exceed four years after, the transfer." Rev. Code § 1336.04(A).

71. Throughout 2024 and 2025, Insight Behavioral was insolvent or plainly becoming insolvent.

72. Defendants' transfers to themselves, as well as to other parties and entities, violated multiple provisions of the Ohio Fraudulent Transfer Act.

73. Defendants' transfers were "transfers" of "assets" within the meaning of Ohio Rev. Code Ann. § 1336.01.

74. Jeremy Meduri, Insight Psychiatric, and Lindsey Fascione were "insiders" of Insight Behavioral within the meaning of Ohio Rev. Code Ann. § 1336.01.

75. Defendants' transfers violated R.C. 1336.04, which prohibits any transfer of assets made with (a) actual intent to defraud any creditor of the transferor, or (b) where the transferor receives inadequate consideration for the assets in the face of a reasonably foreseeable debt which the transferor will be unable to pay. Rev. Code § 1336.04(A)(1) and (A)(2)(b).

76. Defendants' transfers were made with the actual intent to hinder, delay, or defraud Plaintiffs and other class members.

77. Defendants' transfers rendered some or all parties unable to pay their obligations to Plaintiffs and other class members.

78. Insight Behavioral, through its owner Jeremy Meduri, knew when transferring the assets at issue out of the company that the company was not going to pay its debts, including those incurred in connection with the transfers.

79. For instance, substantial proceeds from Insight Behavioral's Accounts Receivable loan, taken at a time when funds were needed to fund payroll and operating expenses, went not into the business but was immediately transferred for Jeremy Meduri and Lindsey Fascione's personal benefit.

80. Likewise, Plaintiff's $38,000 loan to Insight Behavioral was intended to help with payroll, but was immediately transferred out of the company to Jeremy Meduri personally, further rendering Insight Behavioral unable to repay the loan or meet its obligations.

81. Hence, the transfers were intended to, and had the effect of, concealing assets properly belonging to Insight Behavioral outside of the reach of creditors.

82. Defendants' transfers were also made without an exchange of reasonably equivalent value.

83. The value provided by Meduri and Fascione to Insight Behavioral was fully accounted for by their wages. The additional funds that they received from Insight Behavioral via the transfers at issue was not justified by the value that they provided to that organization or the wherewithal of that company to pay more than their wages.

84. Defendants' transfers also violated R.C. 1336.05(A). That section prohibits a transfer of assets made by a transferor as to any creditor whose claim arose before the transfer if the transferor made the transfer without receiving a reasonably equivalent value in exchange and the transferor was insolvent at that time or became insolvent as a result of the transfer.

85. Some or all of Defendants' transfers were made after obligations to Plaintiff and other class members arose. For the reasons stated above, such transfers were made without an exchange of reasonably equivalent value.

86. When the claims of Plaintiff and other class members are taken into account, Insight Behavioral was insolvent at the time of the transfers or became insolvent as a result of the transfers.

87. The Fraudulent Transfer Act empowers the Court to identify the transferees and recoup the transferred assets or proceeds thereof for the benefit of Plaintiff's and other class members' claims. The Act authorizes the Court to set aside the transfers, attach the transferred assets and other property of the transferees, enjoin Defendants from further transfers, appoint a receiver to take charge of the transferred assets and other property of the transferees, and award "any other relief that the circumstances may require." Ohio Rev. Code Ann. § 1336.07.

88. The Act further authorizes the Court to award compensatory damages and attorneys' fees to Plaintiff and other class members, as well as punitive damages to deter Defendants and others from such unlawful conduct.

## COUNT FOUR
## (Unjust Enrichment against all Defendants)

89. Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

90. Plaintiff and the putative class members conferred a benefit on Defendants by working many hours for which they received compensation below the legally mandated rates, and without the employee benefits to which they were entitled.

91. Defendants knew they were receiving a benefit by retaining and utilizing the labor of Plaintiff and the putative class members while failing to provide the compensation and benefits due.

92. In fact, instead of compensating Plaintiff and the putative class members the wages and benefits to which they were entitled, Defendants used those same dollars to unjustly enrich themselves.

93. Defendants intentionally designed the Insight Behavioral compensation structure so as to obtain that benefit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Direct that Court-approved notice be issued to similarly-situated persons informing them of this action and enabling them to opt in pursuant to 29 U.S.C. § 216(b);

B. Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiff and the Classes;

C. Award compensatory damages to Plaintiff and the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b) in the amount of their unpaid wages and commissions, as well as liquidated damages in an equal amount;

D. Enter judgment against Defendant Insight Behavioral and in favor of Plaintiff, the opt-ins who join this case pursuant to 29 U.S.C. § 216(b), and other class members;

E. Enter an order directing Defendant Insight Behavioral to pay the unpaid contributions, interest on the unpaid contributions, reasonable attorney's fees and costs of the action, and such other equitable relief as the court deems appropriate;

F. Enter an order directing Defendant Insight Behavioral to pay a surcharge or equitable restitution disgorging ill-gotten gains from resulting failing to make all necessary contributions and premium payments, and any other equitable relief as the court deems appropriate;

G. Enter an order directing Defendant Insight Behavioral to provide complete and accurate information to Plaintiff and the class members sufficient to determine their employee benefits due;

H. Award Plaintiff costs and attorneys' fees pursuant to 29 U.S.C. § 1132(g);

I. Award legal and equitable relief in favor of Plaintiff and other class members, including setting aside the contested transactions to the extent necessary to satisfy Defendants' obligations to Plaintiff and other class members, as well as attorneys' fees and costs of this action;

J. Award compensatory or statutory damages, as well as punitive damages, to Plaintiff and other class members;

Respectfully submitted,

s/ Scott D. Perlmuter
Scott D. Perlmuter (0082856)
**TITTLE & PERLMUTER**
4106 Bridge Avenue
Cleveland, OH 44113
Phone: 216-222-2222
Fax: 888-604-9299
Email: scott@tittlelawfirm.com

Attorneys for Plaintiffs

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

s/ Scott D. Perlmuter
Scott D. Perlmuter (0082856)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of June, 2026, the foregoing was filed electronically.

Notice of this filing will be sent to all parties who have made an appearance by operation of

the Court's electronic filing system and those parties may access the filing through the Court's system. A copy was served via Regular U.S. Mail upon parties who have not appeared.

s/ Scott D. Perlmuter
Scott D. Perlmuter (0082856)